## Case No. 8,255.

### In re LEONARD.

[4 N. B. R. 562 (Quarto 182).] [1]

District Court, E. D. Missouri. 1871.

BANKRUPTCY — AMENDED PETITION — WHEN ALLOWED—NEW CAUSES OF ACTION—INTENTION OF BANKRUPT LAW — UNJUST EXACTIONS OF CREDITORS.

1. Although the court has, in furtherance of justice, the discretion at any stage of proceedings to permit amendments to be made to pleadings, it is a discretion properly limited to the same cause of action, and it should not permit, under forms of "amendments," new causes of action to be introduced.

2. If there is not proof sufficient to make it appear that the acts of bankruptcy charged have been committed, no order on the defendant to show cause should be granted, nor an order of seizure, injunction, or arrest.

[Cited in Re Price, Case No. 11,411; Re Rogers, Id. 12,003.]

3. The bankrupt law [of 1867 (14 Stat. 517)] is intended to uphold amongst bankers, merchants, etc., prompt payment of commercial obligations, but it should not be perverted to the purpose of wrong and injustice by compelling honest debtors, under apprehension, to yield to unjust exactions from alleged creditors.

4. A debtor or defendant has the right to know what are the allegations which are made against him, and may insist that he shall not be tried on charges not made against him in the original proceedings upon which he has joined issue, and especially that he shall not be called upon just before trial to meet an entirely distinct cause of action.

5. Amendments in legal proceedings always presuppose something to amend—something in the record concerning that distinct substantive matter —not an entirely new cause of action to be substituted for the original one. Substitution is not amendment. The defendant may assent to the incorporation of new causes or acts of bankruptcy into the original petition. If consent is withheld, leave should be refused.

1 [Reprinted by permission.]

On the 7th of January, 1871, a creditor's petition, with proofs, was filed against defendant, praying that he be adjudged a bankrupt, etc. Thereupon a rule upon him to show cause was granted. He appeared, answered, and demanded a jury, and the parties proceeded to take testimony upon the issues made. Within a few days of the time for trial the creditors asked leave to file an amended petition, alleging additional acts of bankruptcy, without notice to the defendant or his attorney. The court granted leave, subject to any objection the defendant might make. He now files his objection in writing, and moves to strike out said amended petition.

TREAT, District Judge. While it is in the discretion of the court at any stage of proceedings, in furtherance of justice, to permit amendments to be made to pleadings, it is a discretion properly limited to the same cause of action—not to permit, under form of "amendments," new causes of action to be introduced, thus perverting the power to amend into a power to substitute one cause of action for another. The petitioning creditor, like a plaintiff, brings a definite cause of action, and makes his allegations accordingly, and the allegata and probata must correspond at the trial. The defendant appears to meet the allegations made, and no others. If there has been an informal or imperfect statement, the court can permit the needed corrections to be made on such terms as justice demands; but it would be an unjust and unjustifiable action on its part to convert, under the name of an amendment, one cause of action into another entirely distinct, calling for different proofs and for different proceedings.

In ordinary actions at law and in equity, the rule is universally recognized, and instead of prescribing a different rule in bankruptcy, there are cogent reasons for enforcing it strictly. When a creditor's petition is filed and proofs submitted to the judge, if he grants an order to show cause why the defendant should not be adjudged a bankrupt upon the alleged acts of bankruptcy, the very terms of the bankrupt act require that, on the trial, the defendant shall prove that the facts set forth in the petition are not true. That provision of the act manifestly depends for explanation on the proceeding, whereby upon the filing of the petition it must be "made to appear" to the court "that sufficient grounds exist" therefor; in other words, that a prima facie case has been established by the proofs offered to sustain the allegations made. It would otherwise be abhorrent to the sense of justice and right that the very stringent proceedings connected often with the creditor's petition should be admissible, viz.: seizure of his property, injunctions, and arrest. If there is not proof sufficient to make it appear that the acts of bankruptcy charged have been

committed, no order on the defendant to show cause can be granted, and the petition falls. If such proof is made allegata and probata corresponding, and the order to show cause is entered, then under proper proofs the court may even grant warrants of arrest and seizure, and issue injunctions. All of the subsequent proceedings are based on the initial proofs "that sufficient ground exists"—that is, that prima facie, the defendant has committed the acts of bankruptcy charged. If no such proof is submitted, no further proceedings follow—the case is at an end, and all ancillary or dependent proceedings, stringent or otherwise, fall to the ground. If, on the other hand, the order to show cause is granted, then defendant has cast upon him the burden of proving a negative (always a difficult and hard matter), unless the courts construe the act to mean that inasmuch as a prima facie case has been made out, the defendant is requested to rebut the same, according to the rules or proceedings familiar to judicial investigations. That construction has been uniformly given to the act by this court, and no room has been suggested which induces a doubt as to the correctness of the rulings upon the point.

It is obvious to all familiar with the operation of the act, that great care and circumspection is required on the part of the courts to prevent its perversion to purposes not within its province. It is not an act for the collection of debts under ordinary circumstances, nor to enable a creditor to hold in terrorem over alleged debtors its stringent provisions, so as to extort compromises or payment of doubtful or unjust demands. While it is designed to uphold among bankers, merchants, etc., prompt payment of their commercial obligations, and thus to secure to commercial paper that force which the "law merchant" requires; and while it also designs, when a debtor is insolvent, or in a state of insolvency, to secure equality among creditors, it is not to be perverted to the purpose of wrong and injustice by compelling honest debtors, under apprehension of the mischiefs to ensue, or the litigation to follow, through its potent and summary modes of proceeding, to yield to unjust exactions from alleged creditors. If such a course should be tolerated through loose or indiscreet rulings of courts, the act, instead of being a system of equality, which is equity, would become an engine of wrong and oppression, to the destruction of commercial business and fair dealing. The duty of courts is two-fold: to guard, on the one hand, against the perversion of forms of proceeding to the injury of honest creditors, and on the other hand, against dishonest contrivances of insolvent debtors, and their favored creditors, to destroy the equitable principle of equality which underlies the whole system. If the act is to be treated in its potential and summary requirements as merely formal and arbitrary, devoid of those established requirements of law whereby justice is administered in judicial tribunals, it would present formidable questions, not as to its expediency, but as to its constitutional validity. These comments are made, not because the question presented, so far as the aspects of the case are concerned, induces any belief that wrong or injustice is now contemplated, but merely to illustrate the general views with regard to the act, in the light of which the court must rule in this case, as it has done in many others. It may be that many cases can be cited, as often they are, on various points, which seem to differ from the conclusions reached by this court; but which, if carefully analyzed, might prove to be fairly in entire accord; but, whether reconcilable or not in all respects with what this court determines, they ought not, unless they involve rulings by the proper appellate tribunals, to cause this court to give them greater weight than, as mere persuasive authority, they are fairly and deferentially entitled to receive. In a system which to a large extent breaks in upon and overturns long settled maxims of law governing the relations of debtor and creditor, it is not remarkable that at first a wide divergence of views should exist, as to its proper construction, and as to its rightful application to the ever-shifting and diversified circumstances of the many cases arising.

Without undertaking to review the various cases wherein such a divergence of judicial opinion appears, it must suffice for the question under review to state that when a creditor resorts to the stringent provisions of this act to divest his creditor not only of the temporary control of his property, or rights of property, legal and equitable, but of all interest therein, he must specially aver the grounds of his action and prove them as averred. Ordinarily, a creditor sues his debtor for a specific sum alleged to be due, and on judgment rendered has his demand satisfied out of so much of his debtor's estate as is sufficient for the purpose. On such a comparatively mild proceeding, the law exacts from a creditor a specific statement of his demand. But when the judgment to be rendered involves not merely the payment of that creditor's demand, but the seizure of all the defendant's property and rights of property, of whatsoever description or nature, and leaves him penniless, except as to the small exemption, permitted to struggle thereafter for the subsistence of himself and family, there certainly can be no adequate reason for relaxing, to his detriment, an elementary principle in judicial proceedings. He has a right to know with what act he is charged, whereby such grave consequences are invoked, and that the charges should be certain to a common intent. He has not only that right, but also the right to insist that he shall not be tried on charges not made against him, or on new

charges not made in the original proceedings upon which he has joined issue, and concerning which he has taken the needed testimony for trial; especially that he shall not be called upon just before trial to meet an entirely distinct cause or causes of action. Amendments in legal proceedings always presuppose something to amend—something in the record concerning that distinct substantive matter; not that an entirely new cause of action is to be substituted for the previous one. Substitution is not amendment. ·

That there may have been, to some extent, informal and loose modes of proceeding under the bankrupt act, is possible; for, from the newness of the system, the vast number of cases, the numberless questions, incidental and otherwise, presented, and the consequent pressure of business, in many instances demanding the immediate action of the court for the preservation of the rights of those concerned, orders may have been granted which, on fuller knowledge of the facts, or maturer consideration of the legal propositions involved, would have been refused. Those ill-considered orders, if any had been made, should not be permitted to ripen into precedents.

There are due to all judicial inquiries certain requirements, sanctioned by the wisdom of ages, for the protection of all invoking the protection of courts, without which the judge and the bench would be clothed, not with judicial, but with arbitrary authority, over the lives, liberties, and property of the people. No such arbitrary authority is compatible with a free or constitutional government, or is known to American jurisprudence.

In proceedings in bankruptcy, as in all other judicial proceedings, the court must act according to well-settled modes of judicial investigations, and also in accordance with the established law. There is no arbitrary authority vested in any court. "Discretia judicis est per leges discernere,"—the discretion of a judge is a legal discretion. In the exercise of that discretion he is as much bound to follow settled rules as the chancellor is in equity to pursue the course established in equitable causes. "Misera est servitus, ubi jus est vagum aut incertum." It may be that a vague and ill-defined opinion obtains out of courts, that under the bankrupt act more arbitrary and undefined powers are vested in the judges and registers than has existed in other judicial inquiries. If that be so, it is time the error was corrected. No judge or register has arbitrary authority, nor is his discretion other than legal discretion. Where the rights of parties are involved judicially, the parties can justly demand that the investigation be conducted only as the known rules of law exact. Hence, in this case, the defendant cannot have interjected into the petition against him a new cause of action.

He was summoned to answer certain specific charges and no other, upon the determination of which not the rights of the petitioning creditors alone rested, but also of all creditors, and of the defendant's own estate in its entirety. If the creditor has not made true charges, the defendant has the right to be exonerated therefrom. If the original or other creditors have new charges to make, let them be made in a proper way and at the proper time. The act provides for such additional proceedings on the part of the creditors; and it also provides for the order of judicial investigation. The rules thus fixed by statute, should be enforced. There should be no judicial legislation with respect thereto, whereby their force is to be impaired, or other, and arbitrary and unjust rules, established. If, after the court has granted the order on a prima facie case made, and the burden of proving a negative has been cast on the defendant, the creditor can, by a so-called "amendment," interject, without process, allegations as to new and entirely distinct acts of bankruptcy, where is the burden or proof as to said new allegations? Shall the court charge the jury that defendant must prove a negative as to the original allegations, and plaintiff as to the others? What legal right has the court to cause defendant to answer at all any allegations except in proof first submitted and deemed sufficient for the purpose? It is a mere evasion of the legal duty to permit that to be done, under color of an amendment, which it had no authority to do originally.

Without elaborating further the many elemental views which are antagonistic to the suggestions of the petitioning creditor, the court states, that the so-called "amended petition" in this case must be stricken from the record, and the parties held to trial on the issues joined upon the original charges preferred. In no other way can the ordinary and essential rules of judicial investigations be maintained. Of course, where the defendant assents to the incorporation of new causes or acts of bankruptcy into the original petition, the court can permit it to be done; but such action rests on the consent of parties. If such consent is withheld, leave should be refused.