CITIZENS' BANK OF SALEM v. W. C. DE PAUW CO.

(Circuit Court of Appeals, Seventh Circuit. January 21, 1901.)

No. 707.

BANKRUPTCY—ACTS OF BANKRUPTCY—CONCEALMENT OF ASSETS BY CORPORATION.

A petition in bankruptcy was filed against a corporation by a creditor alleging that the president of the corporation had secretly purchased, through a third party, judgments against it aggregating $250,000 for the sum of $80,000, and had caused the property of the corporation, worth $200,000, to be sold thereunder, and bid in by the holder, and that the property was resold at a profit of $100,000; all of which facts were known to the corporation, but were not known by its creditors until shortly before the filing of the petition. The position of the petitioner was that, owing to the fiduciary relations between the president and the corporation, the profit realized on the resale of the property in equity belonged to the corporation, and was assets for the payment of its debts, which it had continuously concealed, constituting an act of bankruptcy under Bankr. Act 1898, § 3a, subd. 1. *Held* that, conceding the transaction to have been fraudulent, and an act of bankruptcy on the part of the corporation, it was not on the ground of "concealment" of assets, but the fraud consisted in the "transfer" of its tangible property for an inadequate consideration, with intent to defraud its creditors, within the meaning of the same provision; and that, such transfer having been made more than four months before the filing of the petition, a demurrer thereto was properly sustained.

Appeal from the District Court of the United States for the District of Indiana.

In Bankruptcy. In the matter of the petition of the Citizens' Bank of Salem for an adjudication in bankruptcy against the W. C. De Pauw Company. On appeal from an order sustaining a demurrer to the petition.

The action below was in bankruptcy, and was upon the petition of the Citizens' bank of Salem, a corporation organized under the laws of the State of Indiana, to declare the W. C. DePauw Company, also a corporation under the laws of Indiana, an involuntary bankrupt.

The petition, with its amendments, sets forth substantially the following facts: That the De Pauw corporation became insolvent at the beginning of the year 1895, and has so continued ever since; that, on the 17th of January, 1895, at the suit of Newland T. DePauw, a member of the board of directors, and president of the corporation, a receiver was appointed, who took charge of, and operated the plant, until May 16th, 1898; that the receiver employed Newland T. DePauw as general manager for the receivership, and that, by virtue of this relationship, DePauw obtained full information respecting the assets and liabilities of the corporation.

It is further averred that, November 27th, 1897, DePauw entered into a secret contract with the Union Trust Company of Indianapolis reciting that judgments aggregating one hundred and seventy-one thousand dollars had been obtained against the corporation as principal and DePauw as surety, and other judgments aggregating one hundred thousand dollars had been obtained against the DePauw corporation alone. The agreement assigns to the said Trust Company a large amount of the individual property of DePauw, and provides that in consideration of the property thus transferred the Union Trust Company should purchase the aforesaid judgments at about one third of their face value; that upon such purchase the Union Trust Company should acquire through such judgments the assets of the corporation to be held in trust for DePauw and his sister; that the title thereto should be taken in the name of the Union Trust Company; and that when the Trust Company had been reimbursed for all the sums advanced, with interest, such property and assets should be transferred to said DePauw and his said sister.

It is further averred that this agreement was in substance carried out; that two hundred and fifty thousand dollars of the outstanding judgments were purchased for about eighty thousand dollars; that the transaction was kept a secret, it being given out that such judgments had been purchased by the Union Trust Company in its own right, and were enforceable at their full face value; that a sale of the assets of the corporation under these judgments, and the mortgage securing them, was brought about by the receiver, at which sale the property was bought in by the Trust Company in its own name; that thereafter the plant was operated in the name of the Trust Company until 1899, when it was sold at the request of DePauw to the American Window Glass Company; that over one hundred thousand dollars profit was realized upon this transaction; but that the transactions, except the judicial sale, and the sale to the Window Glass Company, were kept a secret from the creditors of the corporation until March 1st, 1900. The petition alleges that the actual valuation of the property of the corporation was two hundred thousand dollars and that the corporation is indebted to the petitioner in sums aggregating something over twelve thousand dollars.

The petition concludes as follows: "Your petitioner further says that said W. C. DePauw Company well knew all the matters and things hereinbefore set forth whilst the same were occurring, and has known and now well knows that the money and property aforesaid of the estimated value aforesaid of $100,000 are assets belonging to it which should be applied to the satisfaction of your petitioner's said claim, but said W. C. DePauw Company, notwithstanding the premises, and with intent to hinder, delay and defraud your petitioner, has continuously permitted and suffered said assets to be concealed, and has wholly failed to assert any claim thereto, or to take any steps whatever looking to the application of said assets to the satisfaction of your petitioner's said claims, and still permits and suffers such assets to be so concealed."

To this petition a demurrer was filed, and by the court below sustained; and from the order sustaining the demurrer the appeal is taken.

The petitioner's contentions are set forth in the brief of its counsel as follows: "1. By virtue of the fiduciary relationship existing between Newland T. DePauw and his Company, the W. C. DePauw Company, the former was disqualified from entering into a contract of the character of that of November 27, 1897.

"2. All profits (over $100,000.00) realized by Newland T. DePauw by virtue of the contract of November 27, 1897, belong in equity to the W. C. De Pauw Company, and, as such, constitute assets of the W. C. DePauw Company, which should be applied to the payment of its debts, including those of the petitioner.

"3. The W. C. DePauw Company had knowledge of the contract of November 27, 1897, and of the profits which had been realized under such contract, and all its rights by virtue of such contract; having knowledge of the existence of the available assets of the value of $100,000.00, which assets were unknown to its creditors, the W. C. DePauw Company failed to disclose the existence of such assets or take any steps to apply such assets to the payment of its debts.

"4. By so acting and refusing to act, when under the circumstances it could have acted, the W. C. DePauw Company permitted its property and assets to be concealed within the meaning of Section 3 of the Bankrupt Act.

"5. Such concealment is a continuous act, and permitting such concealment is, therefore, a continuous act of bankruptcy, so long as the property continues to be concealed and permission continues to be given to conceal the same."

Morris M. Townley, for appellant.

Ferdinand Winter, for appellee.

Before WOODS and GROSSCUP, Circuit Judges, and BUNN, District Judge.

After the foregoing statement of the case, GROSSCUP, Circuit Judge, delivered the opinion of the court, as follows:

The provisions of the bankrupt act governing this case are as follows:

Section 3, (a), "Acts of bankruptcy by a person shall consist of his having (1) conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, any part of his property with intent to hinder, delay, or defraud his creditors, or any of them," and (b) "A petition may be filed against a person who is insolvent and who has committed an act of bankruptcy within four months after the commission of such act. Such time shall not expire until four months after (1) the date of the recording or registering of the transfer or assignment when the act consists in having made a transfer of any of his property with intent to hinder, delay, or defraud his creditors or for the purpose of giving a preference as hereinbefore provided, or a general assignment for the benefit of his creditors, if by law such recording or registering is required or permitted, or, if it is not, from the date when the beneficiary takes notorious, exclusive, or continuous possession of the property unless the petitioning creditors have received actual notice of such transfer or assignment," and (c) "It shall be a complete defense to any proceedings in bankruptcy instituted under the first subdivision of this section to allege and prove that the party proceeded against was not insolvent as defined in this Act at the time of the filing the petition against him, and if solvency at such date is proved by the alleged bankrupt the proceedings shall be dismissed, and under said subdivision one the burden of proving solvency shall be on the alleged bankrupt," and Section 1, (15) "A person shall be deemed insolvent within the provisions of this Act whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, or removed, or permitted to be concealed or removed,

with intent to defraud, hinder, or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts."

The case presented upon the petition, at most, is that of an officer of a corporation buying up at a discount, under the guise of another person, outstanding judgments against the corporation, under which its property, under the same guise, is subsequently purchased at judicial sale. The insistence is that the property thus transferred from the corporation to the offending officer remains, in equity, the property of the corporation, subject only to a lien in favor of the purchaser (to be asserted, of course, in apt time,) for the actual amount paid out by him; and that the failure of the corporation to assert its right, or make known to the creditors the nature of the transaction under which the transfer was made, constituted in law a concealment of its property with intent to hinder and defraud creditors.

It is clear that if the property transferred under the judicial sale is to be excluded from consideration in balancing the assets and liabilities incident to the question of solvency, the corporation was, after such transfer, insolvent; for after the judicial sale nothing was left to balance against the petitioner's claim. The position of the appellant is that this property, as an available asset, was, in effect, concealed; that the concealment was the debtor's act, intended to diminish, by so much, the property open to seizure by creditors; and that, having thus hindered, delayed, and attempted to defraud his creditors, he can not, when the fraud is disclosed, plead that a restoration of the property to the estate would make it solvent, and thus preclude an application of the bankruptcy law at all. The contention, in short, is that the bankrupt, having committed a fraud that makes him amenable to the law, can not ward off the hand of the law by showing that the extent of the fraud was such that, but for it, the estate would be solvent. The bankrupt law is, in this, as in its other provisions, intended to protect creditors; and was perhaps intended to lend a hand to those who, by its enforcement, will receive one hundred cents, as well as those who will receive but ninety-five, in cases where, but for the enforcement of the law, there would be received less than full payment. This brings us, then, to the real question in this case: If the corporation is guilty of any act of bankruptcy, within what definition does the transaction fall.

It is insisted by counsel for appellant that the transaction constitutes, within the meaning of the bankruptcy law, a concealment of the corporation's property with intent to hinder, etc. Counsel for appellee, on the contrary, contends that the transaction, if an act of bankruptcy at all, falls within the words, "convey," or "transfer," as used in Section 3. The significance of the difference is that, if the latter construction prevails the petition was demurrable; for it shows that more than four months had elapsed after the conveyance or transfer, and before the filing of the petition; while, if the former is maintained, and the concealment is deemed continuous until discovered March 1st, 1900, there remains no question, based upon the four months intervening.

It may, perhaps, with correctness, be said that the separation of some tangible thing, money, or chose in action, from the body of an insolvent debtor's estate, and its secretion from those who have a right to seize upon it for the payment of their debts, is, within the law, a concealment, and continues such as long as the secretion remains. In such a case, the property open to creditors is decreased by just the amount thus secreted. It is, to all intents and purposes, so far as the creditors are concerned, as if the property thus secreted had not been in existence. There is nothing to put the creditors upon notice; nothing that they may keep within their vision—a tangible subject of inquiry, either as to its value or its ownership. It is, in effect, a concealed withdrawal from possibility of seizure of just so much of the debtor's estate.

But such is not the case under review. This case is as if the corporation had transferred to the Trust Company property worth two hundred thousand dollars, at a nominal consideration of two hundred and fifty thousand dollars, but upon the real consideration of eighty thousand dollars. The quantum of property is not kept under cover. There has been no withdrawal. The res is not concealed. It remains open and visible. The creditor may keep it in sight, and may take any available means of seizing it. It is only the actual consideration paid that is concealed. Fraudulent "transfers" are always accompanied by a concealment of some such character. It is what, in most cases, makes the "transfer" fraudulent. But it does not transpose the transaction from its proper place as a fraudulent "transfer" or "conveyance," to some other place in the classification of the law.

We regard the transaction as more nearly falling within the definition of "transfer" than that of "concealment," as these terms are used in the Bankrupt Act. The judicial sale was open; was known to the petitioner; and the thing transferred was clearly defined. The petitioner had the same opportunity of inquiry that other creditors have in cases where debtors attempt to fraudulently convey and transfer their property. To the extent that the Bankrupt Act covers such an offence, we are willing to go, but we have no warrant, we think, to stretch its provisions, in order to meet what may seem like a hard case.

There is no error in the order of the court below.