## In re BROWN COMMERCIAL CAR CO.

## BROWN COMMERCIAL CAR CO. v. CONTINENTAL MOTOR MFG. CO. et al.

### (Circuit Court of Appeals, Seventh Circuit. October 5, 1915.)

### No. 2211.

**1. BANKRUPTCY ⟶91—INSOLVENCY—EVIDENCE.**

That an officer of a corporation made a statement of its condition to its creditors and asked for a settlement at 35 cents on the dollar was a circumstance to be considered in determining whether it was insolvent, though his authority was not clear.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 137–139; Dec. Dig. ⟶91.]

**2. BANKRUPTCY ⟶56—ACTS OF BANKRUPTCY—TIME OF COMMISSION.**

If preferential payments alleged as acts of bankruptcy were made more than four months prior to the filing of the amended petition which asserted them, and were then charged for the first time, and were new and independent preferential acts, charged by way of substitution for the items alleged in the original petition, and not mere enlargements and amendments to alleged acts of bankruptcy set up in petitions filed within four months, the transactions did not arise within four months preceding the filing of the petition.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 61–65, 67, 68, 86–96; Dec. Dig. ⟶56.]

**3. BANKRUPTCY ⟶58—ACTS OF BANKRUPTCY—TIME OF COMMISSION.**

An involuntary petition in bankruptcy alleged as an act of bankruptcy a preferential payment by the bankrupt to a bank. An amended petition alleged various preferential payments to creditors of the bankrupt, made more than four months before the filing of the amended petition, but within four months before the filing of the original petition. It appeared that the payments to such creditors were made through the bank. *Held*, that the allegations of the amended petition were mere explanations of the act of bankruptcy charged in the original petition, and such payments were therefore available as the basis of an adjudication.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 57, 72–79, 83; Dec. Dig. ⟶58.]

**4. BANKRUPTCY ⟶58—ACTS OF BANKRUPTCY—PREFERENTIAL PAYMENTS.**

The return of money advanced to a corporation to meet its pay roll, made within one day of the time of its advance, was not such a preferential payment as would support an adjudication in bankruptcy, especially where the attorney for the petitioning creditors, when interrogated in regard thereto, indicated that he would not rely thereon.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 57, 72–79, 83; Dec. Dig. ⟶58.]

Appeal from the District Court of the United States for the District of Indiana; Albert B. Anderson, Judge.

Petition by the Continental Motor Manufacturing Company and others to have the Brown Commercial Car Company adjudicated a bankrupt. From a decree adjudging such company a bankrupt, it appeals. Affirmed.

Appellant, an Indiana corporation, organized for the purpose of manufacturing and selling light commercial gasoline trucks, was the owner of a plant located near Peru, Ind., with good transportation facilities, which it purchased

·from the Otis Elevator Company for $50,000 in September, 1912, giving therefor no cash, but its 20 notes, for $2,500 each, bearing 6 per cent. interest, maturing at intervals of six months. The plant included several traveling cranes equipped with motors, a power plant which could be easily made to supply necessary power, complete heating, plumbing, and sanitation outfit, together with pumps, machine shops, etc. The buildings were large and substantial and in good condition. The capital stock of appellant was fixed at $100,000, $51,000 of which was subscribed. The balance of $49,000 was to become the property of the president of the company on the happening of certain conditions, which never transpired. The first installment of interest, amounting to $1,500, and the first purchase-price note of $2,500 and interest, were paid. The rest appellant never paid. While it was operating, appellant manufactured and marketed about 150 of its cars. It had some 20 cars on hand, and others under way, when proceedings were begun. The plant was inventoried at about $76,000, or about $26,000 in excess of the purchase price, without including good will, catalogues, parts, etc.

On December 19, 1913, the original petition in bankruptcy herein was filed. It charged insolvency and a preference given to the First National Bank of Peru, Ind., by the payment of $10,000 on or about September 15, 1913. On February 10, 1914, an amended petition in bankruptcy was filed, setting up three acts of bankruptcy—two in addition to that set out in the original petition, both of which were afterwards abandoned. Afterwards, on March 17, 1914, a second amended petition was filed, setting up said first-mentioned preference, said two abandoned alleged acts of bankruptcy, and a new one, to the effect that a preference had been given in the payment of $300 to B. G. Kramer Company on September 23, 1913, and also that "within four months preceding the filing of the original petition herein, on or about the ——— day of ———, Brown Commercial Car Company, while insolvent, committed an act of bankruptcy, in that it did pay to a certain creditor of said Brown Commercial Car Company the sum of ten (10) dollars"; the date of such payment and the payee being unknown to petitioners and not ascertainable, except to said company, whereby a preference was created. On April 28, 1914, a third amended petition was filed. This charged acts of bankruptcy 2 and 3 the same as in the second amended petition, omitted the $10 preference, and substituted the following; i. e.: "That within four months preceding the filing of the original petition herein the said Brown Commercial Car Company, while insolvent, committed further acts of bankruptcy, in that it transferred while insolvent a portion of its property to one or more of its creditors with intent to prefer such creditors," etc., mentioning the names and amounts, and dates of payment ranging from September 8 to December 7, 1913. The original and amended petitions were all negatived by appellant. The original petition was referred to a special master. The amended petitions were not formally referred. They were, however, considered by him, and both appellant and appellees entered upon a hearing thereof without protest, and he made report that at the time the original petition was filed, and for more than four months prior thereto, appellant was insolvent; that on December 7, 1913, it committed an act of bankruptcy in making a payment of $134.73 to one Edwards, while it was insolvent and knew it; that on September 20, 1913, appellant committed a further act of bankruptcy by the payment of $300 to B. G. Kramer, while insolvent and knowing it; that in like manner, by the payment of $150 to the Garage Equipment Company on September 8, 1913, of $228.60 to the Mather Spring Company on September 10, 1913, of $849.54 to Highland Body Company on September 15, 1913, and of $200 to Hays Manufacturing Company, it committed further acts of bankruptcy. He thereupon recommends that the prayer of the third amended petition be granted and appellant adjudged a bankrupt.

A number of witnesses were examined as to the insolvency of appellant. The latter complains that the master accepted the testimony of those who confessedly treated the real estate as part of a dead plant, whereas it claims to have been a going concern. It appears from the evidence that, while it had been employing 50 persons in its work, it had reduced the number to 10. This evidence was before him. Appellant's witnesses placed the value of the

seven-acre plant, including buildings and appurtenances, at from $50,000 to $90,000. Appellees' witnesses placed the value at from $12,500 to $30,000. The master fixed the value at $35,000, and the value of all the personal estate at $45,000, or a total of $80,000. The liabilities, he found, amounted to at least $95,000, with the business tending downward. It will thus be seen that the master found a decrease in the real estate from the purchase price of $15,000 in a period of six months. It appears that the plant was a dead one when appellant bought it. The enterprise was financed by the commercial club of Peru in the attempt to secure a manufacturing plant for the city. On the hearing upon the report of the master it was sustained, and appellant was adjudged a bankrupt, and this appeal was taken.

The errors assigned are, in substance: (1) That the court decreed appellant to be insolvent; (2) that the court found said acts to be preferences; (3) the court adjudged that the payments to Garage Equipment Company, Mather Spring Company, Highland Body Company, and Hays Manufacturing Company constituted preferences, respectively, and consequently acts of bankruptcy, and held that appellant should be adjudged a bankrupt by reason of these, whereas none of these acts occurred within a period of four months before the petition which alleges them was filed.

Other facts will appear in the opinion.

Claude Y. Andrews, of Peru, Ind., for appellee.

Before BAKER, KOHLSAAT, and MACK, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). [1, 2] While there may have been some haste in closing down upon the new-born project of appellant, and a decided bearish attack upon the value of the real estate then recently purchased for the sum of $50,-000, we are unable to discover from the record that there was any error calculated to discredit the finding of the master. While the plant was not yet moribund, the evidence gives strong color to appellees' contention that it was headed in that direction. Some one of appellant's officers made a statement to its creditors of its condition and asked for a settlement at 35 cents. While the authority of this party does not seem clear, it is a circumstance to be considered. There is no evidence of a brightening future. The evidence in such cases is generally so conflicting as to make a review of little value. The present case was no exception. The master had all the facts and the proclaimers of them before him, and, under the circumstances, we are not disposed to overthrow his findings. We therefore concur in the adjudication of the master and the District Court as to the insolvency of appellant at the time of and for four months previous to the filing of the original petition.

The adjudication was recommended by the master, based upon the third amended petition, filed April 28, 1913. This sets out several alleged preferential acts growing out of the transactions with the First National Bank of Peru, and the alleged preferential payments, among others, to R. A. Edwards, B. G. Kramer, Garage Equipment Company, Mather Spring Company, Highland Body Company, and Hays Manufacturing Company, which are the only items which the master finds constituted preferences. These transactions took place more than four months prior to the filing of the third amended petition. For this reason, mainly, appellant urges that the appellees have failed to allege preferential payments within the four-months period immediately

preceding the filing of the petition which alleges them. If these acts occurred more than four months prior to the filing of the amended petition which asserts them, and were charged for the first time on April 28, 1914, and are new and independent preferential acts charged by way of substitution for the items alleged in the original petition, and not mere enlargements and amendments to the alleged acts of bankruptcy set out in petitions filed within the proper four-months period, then and in that case the transactions have not arisen within the four-months period immediately preceding the filing of the petition. Remington on Bankruptcy, §§ 264, 265; Reed v. Crowley, 1 N. B. R. 516 (Fed. Cas. No. 11,644); In re Leonard, 4 N. B. R. 562 (Fed. Cas. No. 8,255); In re Haff, 136 Fed. 78, 68 C. C. A. 646; Walker v. Woodside, 164 Fed. 680, 90 C. C. A. 644; In re Pure Milk Co. (D. C.) 154 Fed. 682.

[3, 4] For appellee it is contended that, while the several items covering the names of payees and the dates and amounts of payments alleged to have been preferences, as set out in the third amended petition, were not mentioned by name in any of the preceding petitions, yet some of them were in fact included in the first allegations of an act of bankruptcy in the original petition concerning advances to the First National Bank of Peru; that is to say, the payments to the Garage Equipment Company, the Mather Spring Company, and the Highland Body Company were paid to or through the said bank, but were in fact payments to or for said several parties. We regard said three statements of the third amended petition as mere explanations of the first act of bankruptcy charged, and not as substituted items, since the record shows such to be the facts. Appellee further claims that each of the alleged preferential payments specified by name, date, and amount in the third amended petition are specifications of the $10 item set out in the second amended petition filed March 17, 1914; but this amended petition was filed after the lapse of more than four months from the date of the transactions herein attempted to be made bases for evidence of preferences. Since the waiver of the second and third alleged acts of bankruptcy, and under the rule above stated, all acts alleged for the first time in the second and third amended petitions, if not elaborations of or pertaining to the first alleged act of bankruptcy, viz., preferential payments to the First National Bank of Peru, are not properly pleaded. We are unable to trace any connection between the allegations of the second amended petition as to a preferential payment of $10 to unknown creditors and any previously alleged act of bankruptcy. So far as we can judge from the evidence, that item refers to a new and independent act of bankruptcy. The alleged preferential payment of $134.73 to Edwards was merely the return of money advanced to meet the pay roll, made within one day of the time of its advance. Moreover, when interrogated thereto, counsel for appellees indicated that he would not rely on this item. (Record, p. 77.) We do not consider it available for the purposes of this suit.

The allegation of the second amended petition that appellant committed an act of bankruptcy, in that it paid the sum of $300 to B. G. Kramer on September 20, 1913, was first made on March 17, 1913, or

almost six months after that payment was made, although it was a payment in fact to one Andrews, the person who was petitioners' attorney, and as such made oath to the original and the first and second amended petitions, and therefore cannot urge want of notice of such payment. This payment was an independent item, and cannot be held to have been included in any previous charge of a preferential payment. It could not, therefore, have been available for purposes of adjudication.

Without taking up the other items of the third amended petition, which seem to be only a few out of many payments in the regular course of business, we are of the opinion that the three items above mentioned—those of the Garage Equipment Company, the Mather Spring Company, and the Highland Body Company—may, under the rule laid down in In re Shoesmith, 135 Fed. 684, 68 C. C. A. 322, properly be regarded as specifications under the said first alleged act of bankruptcy, and, as such, treated as amendments thereto and not as substitutes therefor. These payments, it appears, were made when appellant was insolvent and unable to pay its debts, and were by the master and District Court, and are by us, deemed to constitute acts of bankruptcy.

The decree of the District Court is therefore affirmed.