**In re NAPCO MFG. CO., Inc.**

**No. B-4-47.**

District Court, D. Nebraska,
Omaha Division.

July 18, 1947.

Everett C. Pilcher (of Pilcher & Haney), of Omaha, Neb., for petitioning creditors.

Paul F. Good and Harry B. Cohen (of Monsky, Grodinsky, Good & Cohen), both of Omaha, Neb., for alleged bankrupt.

DONOHOE, District Judge.

McKesson & Robbins, Inc., a corporation, Robert W. Haney, doing business as Ace Brokerage Company, and Fuchs Machinery & Supply Company, a copartnership, have filed an involuntary petition in bankruptcy against the Napco Manufacturing Co., Inc., hereinafter designated as the debtor or alleged bankrupt.

The petition alleges, and the answer admits, that the petitioners are creditors of the alleged bankrupt and have provable claims in excess of $500. It is charged in the petition that the debtor, while insolvent, and within four months from the date of the filing of the petition, committed an act

of bankruptcy in that it did, while insolvent, convey, transfer, conceal, remove or permitted to be concealed or removed, its assets with the intent to hinder, delay or defraud its creditors. The petitioning creditors allege that they have inquired of the alleged bankrupt's officers regarding the debtor's affairs and the whereabouts of its assets, and that said officers have, during the past four months, failed and refused to divulge any information to the petitioners regarding these matters.

The answer admits that the petitioners are business entities as alleged in the petition; that the petitioners' claims arose in the manner alleged in the petition; and that no payments have been made upon the indebtedness. In the answer, it is denied that the debtor has committed an act of bankruptcy and alleged that the debtor has fully disclosed all of its assets to its creditors and has, on numerous occasions, informed Robert W. Haney, one of the petitioning creditors and attorney for the other petitioners, as to the nature, amount and kind of the debtor's assets.

The case has been tried to the court on the petition and answer and oral and documentary evidence. Certain material facts have been established without any substantial dispute or conflict in the evidence, and these facts will now be briefly recorded.

The alleged bankrupt is a Nebraska corporation which prior to May, 1945, was engaged in the business of manufacturing small limestone figurines or statuettes at 1001 Farnam Street, in the city of Omaha, Nebraska. Since that time the debtor's affairs, at least from the standpoint of manufacturing operations, have been in a state of suspension. The debtor's assets consist of an unfixed number of rubber statuette moulds, two or three wooden workbenches, two large kettles used for heating limestone mixtures, and some miscellaneous small tools. Since some time shortly after the discontinuance of active operations by the debtor, the bulk of these assets has been in the possession of one Carey, doing business as Carey Manufacturing Company or Carey Enterprises, at 25th and Farnam Streets, in the city of Omaha, Nebraska, under an arrangement whereby the assets have been loaned to Carey by H. Cherniak and J. Cherniak. The remaining assets have been and were, at the time of the trial, in the building where the debtor's operations were formerly carried on.

Sixty per cent of the debtor's capital stock is held in the name of Evelyn Bundy Hill, for the benefit of her employers, H. Cherniak and J. Cherniak. Forty per cent of the stock stands in the name of Miss H. M. O'Connor. On or about September 16, 1946, Mrs. Hill was elected president and treasurer of the alleged bankrupt, and Miss O'Connor was then elected vice-president and secretary.

The petitioning creditors having based their case upon the theory that the debtor's assets were, within four months from the date of the filing of the petition (January 29, 1947), concealed with the intent to hinder, delay or defraud creditors, a vital issue, upon which the evidence is conflicting, is whether there was a concealment within the statutory definition of the first act of bankruptcy, as found in Section 3, sub. a(1) of the Bankruptcy Act, 11 U.S.C.A. § 21, sub. a(1). On this issue, the court finds that since the fall of 1945 the debtor has owned no assets other than those of which the petitioning creditors either knew, or must be held to have known, of the existence and whereabouts thereof. The court further finds that there has been no concealment of the alleged bankrupt's assets within four months prior to the filing of the involuntary petition in bankruptcy.

Certain considerations which have prompted the court in reaching these conclusions will be noted. A meeting of the alleged bankrupt's creditors was held in the spring of 1945, after the indebtedness to the petitioning creditors had been incurred. Mr. Haney, then representing the petitioning creditors, attended this meeting and examined the debtor's books and observed its assets which, at that time, were substantially the same as those disclosed by the evidence at the trial. About two or three weeks after the creditors' meeting, Mr. Haney learned that arrangements were being made to obtain some one to take over the management of the debtor's manufacturing operations, and at least in the fall

of 1945 he knew that part of the debtor's statuette moulds, benches and kettles were in the possession of Carey. The Carey Manufacturing Company, or Carey Enterprises, was listed, with its address, in the telephone directory for the city of Omaha during the years of 1944, 1945 and 1946. For about a year prior to the time when the alleged bankrupt discontinued manufacturing operations in May, 1945, Mrs. Hill was familiar with its affairs, and she knew the type of business which was being transacted and what were the debtor's assets and their location. Some few days after she was elected president and treasurer in September, 1946, Mrs. Hill went to the office of Mr. Haney, an attorney who was then representing her personally in a real estate transaction. At that time, the debtor's assets and their whereabouts were discussed. Thereafter, the extent of the assets seems to have been somewhat of a joking matter as between Mr. Haney and Mrs. Hill.

Mr. Haney, up until his withdrawal from the case at the trial, had acted as attorney for himself and the remaining petitioners.

The first act of bankruptcy prescribed by Section 3, sub. a(1) of the Bankruptcy Act, 11 U.S.C.A. § 21, sub. a(1) consists of a person having "conveyed, transferred, concealed, removed, or permitted to be concealed or removed any part of his property, with intent to hinder, delay, or defraud his creditors or any of them."

■ Property is concealed or permitted to be concealed within the meaning of those terms, as used in the above statute, when a person does, or permits to be done, anything with intent to hinder, delay, or defraud his creditors which prevents, or tends to prevent, discovery of the property. Proof of concealment, however, requires something more than a mere failure to volunteer information to creditors. Continental Bank & Trust Co. of New York v. Winter, 2 Cir., 153 F.2d 397, 399. In Coghlan v. United States, 8 Cir., 147 F.2d 233, certiorari denied, 325 U.S. 888, 65 S. Ct. 1569, 89 L.Ed. 2001, a prosecution for concealment of a bankrupt's assets, the court said: "Manifestly, the word (concealment) is not to be limited in meaning to physical secretion, as contended by defendant. It also means to prevent discovery or to withhold knowledge by refusing or failing to divulge information. As said by the Circuit Court of Appeals of the Third Circuit, in United States v. Schireson, 3 Cir., 116 F.2d 881, 884, 132 A.L.R. 1157, 'In connection with the problem of analyzing what is involved in this offense it must be borne in mind that the word "conceal" does not mean merely to secret or hide away. It means, also, "to prevent the discovery of or to withhold knowledge of." If a bankrupt owned land with an office building on it, it is hardly conceivable that he could physically hide it away. Yet there could be no doubt that he would be concealing this asset from the trustee in bankruptcy by failing to disclose his ownership.'" 8 Cir., 147 F.2d at pages 236, 237.

■ The evidence in this case does not establish a concealment of the alleged bankrupt's assets within the foregoing rules. Obviously, there can be no prevention of the discovery of, or the withholding of knowledge of, assets where the debtor has not owned any other or further property than that of which the petitioners must be held to have had knowledge, both as to existence and whereabouts. In this case, the quantum of assets has not been kept under cover but has remained open and visible. Cf. Citizens' Bank of Salem v. W. C. DePauw Co., 7 Cir., 105 F. 926. That the petitioning creditors, in good faith but mistakenly, have assumed or supposed that the alleged bankrupt had other assets, and that these were being concealed, certainly affords no grounds for an adjudication of bankruptcy.

The court holds that the petitioning creditors have failed to establish that the debtor has committed an act of bankruptcy as alleged in the petition, and that the petition must be dismissed with costs taxed against the petitioners.

A judgment in accordance herewith is being entered.