CHICAGO MOTOR VEHICLE CO. v. AMERICAN OAK LEATHER CO.
et al.

(Circuit Court of Appeals, Seventh Circuit. August 1, 1905.)

No. 1,175.

1. BANKRUPTCY—PROCEDURE—POWER TO PERMIT AMENDMENT OF PETITION.

A petition in involuntary bankruptcy alleged certain specific acts of bankruptcy, and also contained a general allegation of the giving of preferences to other creditors, whose names were unknown to the petitioners. No objection was made to the petition, issue was joined, a jury waived, and the cause sent to a referee as special master, before whom a large amount of testimony was taken, some of which related to preferential transfers not specified in the petition. No objection was made on that ground, but defendant also introduced testimony relating to the same transfers, which were found by the referee to constitute acts of bankruptcy. *Held*, that such findings were justified under the circumstances, and that the court had power to pass on the sufficiency of the petition, and in its discretion to permit an amendment, alleging such specific transfers as acts of bankruptcy, which amendment dated back to the filing of the petition.

2. SAME—INSOLVENCY OF CORPORATION—EVIDENCE CONSIDERED.

Evidence taken before a referee as special master on a petition in involuntary bankruptcy against a corporation, and the answer thereto considered, and *held* to sustain the referee's findings of insolvency and of the commission of acts of bankruptcy, under the rule that such findings are to be taken as presumptively correct.

Appeal from the District Court of the United States for the Northern Division of the Northern District of Illinois.

This appeal is from an adjudication of involuntary bankruptcy against the Chicago Motor Vehicle Co., appellant, entered in the District Court February 3, 1905, upon report of a referee, as special master, and hearing upon exceptions. Petition by three creditors for such adjudication was filed October 12, 1903, averring insolvency of the appellant and the commission of acts of bankruptcy within four months. It specified three instances of alleged preference within four months, and while so insolvent, with intent to prefer the three creditors named, and avers that like preferences were given within such time "to certain of its creditors, whose names are at present unknown" to the petitioners, "to the amount of at least five hundred dollars." The appellant filed two answers—first, a denial of insolvency and of the commission of the acts of bankruptcy alleged, with demand of a jury trial, and, subsequently, specific denials of the several allegations, with various averments of matters not within the statutory issues. On the application of all parties, March 23, 1904, upon waiver of trial by jury, an order was entered in the District Court that the issues be "specially referred to Referee F. L. Wean, on the original petition and answer thereto, to hear, take proofs, and report his conclusions and recommendations." The hearing before the referee was extraordinary in the time occupied and the extent and diffuseness of the testimony upon these issues. The report of the referee was made September 30, 1904, reviewing the testimony at considerable length, and finding against the appellant upon the issues of insolvency and commission of acts of bankruptcy, which were the only contested matters. In substance, his conclusions upon the insolvency issue were: That the indebtedness was "at least $212,000;" that a fair valuation of the assets (consisting of a manufacturing plant, products, and materials, with accounts and bills receivable of doubtful value) is difficult to ascertain under evidence "almost irreconcilably conflicting," but that $150,123.56 is "the maximum that can be allowed as a fair valuation of all the property" on October 12, 1903; that the aggregate during the four months theretofore "was not, at a fair valuation, sufficient to pay all its

debts." Upon the issue of acts of bankruptcy, the referee finds preferential transfers and payments, within the four-months period, to three specified creditors, namely: (1) Donaldson, who was president of the appellant, (2) Worth, one of its officers, (3) Caldwell, an employé; also, a doubtful transaction with one Bronson, through Donaldson, and that others appeared of a similar nature, and all "constituted acts of bankruptcy." Neither of the preferences referred to is specifically mentioned in the original petition, nor is there any finding upon either of the preferences so specified. Both parties filed certain exceptions to the report, and hearing in the District Court occured, resulting in orders January 9, 1905, (1) overruling the exceptions and approving the report, and (2) adjudicating bankruptcy. On January 10, 1905, all parties appearing, the orders last mentioned were vacated, and new orders were entered, namely: (1) Granting leave to petitioning creditors (who had intervened, by leave of court, April 12, 1904) "to file instanter their amended petition," wherein the acts of bankruptcy so reported by the referee were specified; (2) the exceptions on the part of the bankrupt to the report were overruled, and the report approved, the bankrupt excepting, and praying an appeal, for which appeal bond was fixed; and (3) an adjudication of bankruptcy in a separate order of like date. Confusion appears to have arisen in the attempted appeal, and on February 3, 1905, the former adjudication of bankruptcy was vacated, and a new adjudication was then entered of that date, from which this appeal is prosecuted.

E. E. McKay and S. M. Meek, for appellant.
Jacob Newman and S. O. Levinson, for appellees.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

SEAMAN, Circuit Judge, after stating the facts, delivered the opinion of the court.

The only questions arising upon this appeal are a single one of bankruptcy practice and two issues of fact. Error is assigned upon various rulings of the referee in the admission or rejection of testimony, and these rulings are pressed in the argument for reversal; but we are of opinion that no reversible error appears in either, and that neither of such assignments touches the merits of the controversy or justifies discussion. While the question of practice is complicated in the methods pursued by both parties to the controversy, its solution is free from difficulty when the proceedings are considered as an entirety. The appellant contends, in effect, that the petition on which the issues were referred confers no authority to hear the testimony or find the acts of bankruptcy reported by the referee, and that the District Court was without jurisdiction to allow the amendment to take effect as of the date when the original petition was filed, or to adjudge bankruptcy upon the report. Neither of these propositions is tenable. It is true that the original petition was defective in the allegation of other acts of bankruptcy than those specifically described. On objection raised before answer, or in the course of hearing, under the well-recognized practice, the District Court would either have required specification of any further acts, by way of amendment, as a condition precedent to the introduction of proof, or stricken out the general averments. Instead of thus calling attention to the defect, the appellant elected to take issue upon this general allegation by express denial, and proceeded upon the hearing without an objection, even before the referee, which raises the question. Upon the oral argument counsel for the appellant reasserted, in substance, the statement which appeared in their brief, "that on every

occasion, when this class of proof was offered by petitioners, objection was made" (referring to pages of the record there cited), and leave was given to furnish any further citations from the record in a supplemental brief to be filed. That brief is at hand, but without supporting references. On examination of the pages relied upon, the objection appears, in like general form with those interposed to all classes of testimony, in remarkable frequency throughout the record, and in one instance, only, refers to the petition. A witness, who was the representative of the receiver, after mentioning property on hand, had testified that certain machines were not found which the books indicated to be in stock, and named as claiming their ownership two persons (Worth and Caldwell), both employés of the company; also, that witness had made demand of Caldwell, who refused to deliver the property. Upon inquiry as to the claim then made by Caldwell, one of the counsel for the bankrupt objected, "on the ground it is not based on the petition, and the further ground that it is not competent." The answer was received, and the examination proceeded, with much cumulative testimony introduced tending to prove preferential transfers within the four months to numerous persons not named in the petition, and it does not appear that the want of sufficient allegations in the petition was expressly called to attention at any stage, nor was the above-mentioned form of objection renewed, and no motion appears to strike out testimony for such cause. Indeed, it appears that much testimony on the part of the appellant was directed to these unspecified transactions. No surprise is suggested, and it is obvious that ample time was afforded to meet the evidence received under the general allegation. The contention that the objection was well and seasonably raised before the referee is plainly without merit.

The evidence being thus received and reported to the court with the finding of facts, the doctrine is well settled that the jurisdiction of the District Court was complete, both to determine whether the petition was sufficient in form to cover these facts, and to allow amendment of the petition if deemed insufficient, and that an amendment so allowed and made "relates to and takes effect as of the date of the filing of the original petition." The case in that respect is ruled by the decision of this court in Re Shoesmith, of the present term (135 Fed. 684, 688, 68 C. C. A. 322), and the allowance was within the judicial discretion, whether necessary or unnecessary at that stage. See The Tremolo Patent, 23 Wall. 518, 527, 23 L. Ed. 97; Graffam v. Burgess, 117 U. S. 180, 194, 6 Sup. Ct. 686, 29 L. Ed. 839.

The questions of fact are: (1) Whether the findings of insolvency are established by the evidence, and (2) whether the preferential transfers found by the referee are alike well founded. The answer to the first question will dispose of the second, as the facts of the several transfers are substantially undisputed, and the further inquiries of insolvency in fact and imputed knowledge thereof in either instance are the only debatable element.

The issues were sent to the referee, as special master, "to hear, take proofs, and report his conclusions," on the application and consent of all parties. Thus the appellant waived its right to a jury trial, and

chose submission of the controversy to the master, not as the mere re-
corder of the testimony, but as the tribunal of first instance to determine
the ultimate facts.    In such case the findings "are to be taken as pre-
sumptively correct," and are reviewable only "when there has been man-
ifest error in the consideration given to the evidence or in the applica-
tion of the law."    Kimberly v. Arms, 129 U. S. 512, 524, 9 Sup. Ct.
355, 32 L. Ed. 764; 11 Rose's Notes U. S. Rep. 713; Tilghman v. Proc-
tor, 125 U. S. 136, 149, 8 Sup. Ct. 894, 31 L. Ed. 664; Callaghan v. My-
ers, 128 U. S. 617, 666, 9 Sup. Ct. 177, 32 L. Ed. 547.    The rule so
stated is plainly applicable for just consideration of the mass of con-
flicting testimony introduced upon this hearing to ascertain the value
of the assets, on which the question of insolvency hinges.    As the ref-
eree heard the witnesses, his judgment of the relative value and credibil-
ity of their testimony is entitled to affirmance under these conditions,
unless it appears that it rests upon an erroneous theory of valuation, or
controlling testimony was disregarded in his conclusions.    The report
of the referee contains a review of the testimony, and is convincing that
there was no departure from the rule of fair valuation of assets, as de-
fined under the bankruptcy act; that the findings are well supported by
competent evidence; and that the valuations submitted on behalf of the
appellant were generally excessive—grossly so in respect of patents and
manufacturing plant in any view.    This consideration of the findings
is strengthened by their confirmation upon review and full hearing in
the District Court.    So, were it not for the contentions in argument and
briefs on behalf of the appellant that both testimony and findings are
erroneously and manifestly predicated upon "wrecker's prices" and
"scrap values," and not upon fair valuations as a going concern, the
general rule above cited would authorize affirmance of the report and
order, without reviewing the testimony on valuations; and it may well
be remarked that the briefs do not clearly point out the errors complain-
ed of.

On examination, however, of the testimony referred to, it satisfacto-
rily appears that the evidence supports the finding of fair valuation of
the aggregate of the appellant's property, and that the complaints so
earnestly pressed are not well founded.    These general facts unmistak-
ably appear: That the corporation was organized and its operations car-
ried on during its brief existence with insufficient capital to accomplish
the business sought; that the patents, which entered largely into the
capitalization, however valuable as contributions to the venture, were
available only when sufficient cash, or other means, was contributed to
manufacture and market the products, and their fair valuation was prob-
lematical; that the operations were hampered and success constantly
threatened because available means were not at hand; that, whatever
of promises in future business were thus far indicated in production and
sales, a successful business was not well established and not well assur-
ed without further capital; and, finally, prior to October, 1903, creditors
were pressing, and urgent demands for pay rolls and other needs were
relieved only through temporary loans upon pledges of goods and like
expedients of the debtor in a struggle to carry on business with insuf-
ficient cash and credit.    The real estate, buildings, and fixed machinery

of the concern were purchased in the year 1900 for $30,000 (an old plant formerly used for other manufacturing purposes), but entered on the books of the appellant immediately at $150,000. Improvements and repairs made by the appellant aggregated less than $15,000, as indicated by the books. While it is generally difficult to fix the fair market value of such property—and plainly neither the purchase price nor the valuation placed upon the books of the corporation is controlling—the referee's approximation of $50,000 impresses us as reasonable and fair under the testimony, with reference to all the conditions existing October 12, 1903. For valuation of the patents, the testimony furnishes little aid, and from the nature of the property right, it is difficult, if not impossible, to fix any market value upon the patents mentioned. If credible testimony appears which tends to show the validity, utility, and intrinsic value of either, it is not referred to in the briefs. The testimony on the part of the appellant of purported offers made for certain of their patents was rightly disregarded by the referee, for the sufficient reason, if otherwise entitled to consideration, that neither bona fide intention to purchase nor ability to consummate was apparent; and the valuation stated by the witnesses for the appellant were neither well founded nor credible. Surely no ground appears to raise the estimate reported by the referee upon the patents. Other exceptions to the valuations so reported do not justify discussion in detail, as it is manifest that the aggregate valuation of the property, in any view of these minor valuations, was insufficient to pay the conceded indebtedness of the corporation. No reversible error appearing, the finding thereupon will not be disturbed.

So, in respect of the finding that acts of bankruptcy were committed, both the fact of insolvency and imputed knowledge, in three instances of preference, at least, unmistakably appear and sustain the finding.

The order of the District Court that the appellant be adjudged bankrupt accordingly is affirmed.