## In re HAVENS.

### Petition of EXCHANGE NAT. BANK.

(Circuit Court of Appeals, Second Circuit. December 11, 1918.)

Nos. 75, 95.

1. BANKRUPTCY ⚖➡84—INVOLUNTARY PROCEEDINGS—AMENDMENT OF PETITION.
   That the allegations of an involuntary petition are insufficient, as vague and general, does not deprive the court of jurisdiction, and it may properly permit amendment.

2. BANKRUPTCY ⚖➡84—AMENDMENT OF PETITION—ALLEGING NEW ACTS OF BANKRUPTCY.
   An act of bankruptcy, committed and complete more than four months prior to amendment of an involuntary petition, cannot be charged for the first time in the amendment; but where such act consists of concealment of property, which has continued, the four months period will not begin to run until discovery by petitioning creditors.

3. BANKRUPTCY ⚖➡234—EXAMINATION OF BANKRUPT—PRIVILEGE.
   An alleged bankrupt, although he has removed from the district where involuntary proceedings are pending against him, when in the district in attendance on such proceedings is subject to all lawful orders of the court therein, including an order to appear for examination, under Bankruptcy Act, § 21a (Comp. St. § 9605).

⚖➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. COURTS ☞1—"JURISDICTION."**

"Jurisdiction" is the power to hear and determine a cause.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Jurisdiction.]

Petitions to Revise and Appeals from Orders of the District Court of the United States for the Western District of New York.

In the matter of James H. Havens, alleged bankrupt. On petitions by bankrupt and by the Exchange National Bank to revise orders of the District Court. Affirmed on bankrupt's petition, and reversed on bank's petition.

On or about November 6, 1917, the Exchange National Bank filed a petition in involuntary bankruptcy against Havens as a person having less than 12 creditors and having for the greater portion of the six months preceding said filing resided and had his principal place of business at Olean, N. Y., within said Western district. The single act of bankruptcy alleged was that, being insolvent, Havens "on or about October 3, 1917," did "transfer and convey and cause to be placed upon the records of the clerk of Cattaraugus county deeds transferring and conveying a large part of his property with the intent to hinder, delay, and defraud his creditors."

On or about November 23d Havens answered this petition, admitting jurisdiction in respect of residence and place of business, and also the fact of transfer as alleged, but setting forth that said transfers were to his wife, were for a good and valuable consideration, were not made with intent to hinder, etc., and that he was not at the time of said transfer insolvent, and of the issue thus tendered he demanded a jury trial. On or about April 9, 1918, the issue thus framed came on for trial, and thereupon Havens moved to dismiss the petition because it did "not set forth sufficient facts to give the court jurisdiction to enter an adjudication in bankruptcy" against him.

The District Judge held the petition insufficient, but allowed the petitioner to file an amended petition. Such petition was filed on or about April 20—a delay complained of at the time, but not now material. This amended petition set forth in great detail the transfer by deeds recorded October 3, 1917, of what is alleged to be substantially Havens' entire estate. In respect of this transaction the amended petition is but an amplification of the original one.

But in the amended petition for the first time, and therefore on or about April 20, 1918, the Exchange Bank alleged as an act of bankruptcy that Havens, being insolvent, on May 12, 1917, procured a loan of money secured by mortgage on certain real estate which he then owned, and, having by means of such mortgage obtained the sum of $30,000, the proceeds thereof, he did "within four months next preceding the date of the filing of the original petition * * * take, carry away, conceal and secrete" the said $30,000 from his creditors—has "placed the same beyond the jurisdiction of the court, * * * has continued to conceal and secrete [the same] ever since, and presently conceals and secretes" it. Thereupon Havens moved to dismiss the amended petition as not setting forth sufficient facts to give the court jurisdiction, and more particularly because the acts of bankruptcy therein alleged were all committed more than four months prior to the date of filing said amended petition. On the hearing of this motion an order was entered (1) denying the motion to dismiss, but (2) striking out the allegations in respect of the concealment of $30,000 hereinabove set forth.

Thereupon Havens took a petition to revise this order, alleging as error that the amended petition had not been wholly dismissed, and the Exchange National Bank also took similar proceeding, alleging as error that the allegations regarding the $30,000 mortgage transaction had been stricken out. (The record on these two petitions is docket No. 75, October term, 1918.)

When the issue framed on the original petition was set for trial, Havens attended in Buffalo, presumably in order to testify. No trial took place, because his motion to dismiss prevailed, in the sense that an amended petition

was required by the court. Accordingly he repaired to a railway station in Buffalo and was in the act (as his attorney deposes) of procuring "transportation and Pullman accommodation from Buffalo to Joplin, Mo.," when he was served with an order requiring him to submit to an examination pursuant to section 21a of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 551 [Comp. St. § 9605]) before a referee in bankruptcy in Buffalo at a date apparently 48 hours or thereabouts subsequent to the time of service.

Apparently Havens never appeared before the referee, nor in any way obeyed the order of the District Judge, but subsequent to the time when he should have appeared moved to vacate the order for examination on the ground that he, being a resident of Missouri, had voluntarily come within the Western district of New York in order to attend the trial of the petition against him, and that before he could return to his Missouri home he had been served with the order aforesaid.

This motion was heard upon affidavits showing that Havens claimed citizenship and residence in Missouri since some date in October, 1917; he did not specify any place within that state of which he became a resident after leaving Olean a few days before petition filed, but did make oath that his "principal places of business" had been for about a year at "Springfield, Mansfield, and Joplin in said state." On behalf of the petitioner it was shown that diligent inquiry at all of these places had failed to discover Havens or his actual whereabouts, except that "his mail should be forwarded to Williamsport, Pa., in care of" the attorney who appears for him on this appeal.

Upon this showing the District Court entered an order whereby the "service of the order [for examination] be and the same is hereby set aside and held for naught, upon the ground that the alleged bankrupt was at the time of said service a resident of the state of Missouri temporarily within the territorial jurisdiction of this court in order to attend the trial of the issues in this proceeding, and for that reason privileged from the service of the order aforementioned." Thereupon the Exchange National Bank took the third petition to revise, which is No. 95 on our docket for the present term.

Gibbons & Pottle, of Buffalo, N. Y. (M. C. Rhone, of Williamsport, Pa., of counsel), for Havens.

Hastings & Jewell, of Olean, N. Y. (Edward W. Hatch and Henry A. Rubino, both of New York City, of counsel), for Exchange Nat. Bank.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] 1. The petition of Havens asserts in substance that the District Court was without jurisdiction to do anything but dismiss the original petition, and therefore erred in allowing any amendment.

[4] Jurisdiction is no more (for present purposes) than the power to hear and determine a cause. Byers v. McAuley, 149 U. S. 628, 13 Sup. Ct. 906, 37 L. Ed. 867. Not only did the District Court possess jurisdiction in this fundamental sense, but it was the only court that could originally hear and adjudicate on the matters presented or sought to be presented by the petition as first framed.

Being thus rightfully possessed of the cause, the court also enjoyed that power of amendment which is incidental to all judicial administration and vital to the ends of justice. Bank v. Sherman, 101 U. S. 406, 25 L. Ed. 866. We are not permitted by this petition to inquire into the sufficiency of the Exchange Bank's first pleading. It was evidently regarded by the District Judge as "too vague and general," and therefore amendment was required. This is common practice.

In re Rosenblatt, 193 Fed. 640, 113 C. C. A. 506; In re Riggs Restaurant Co., 130 Fed. 691, 66 C. C. A. 48—decisions plainly indicating approved practice in this circuit.

The amendments made and permitted to stand were no more than a restatement, descending into unnecessary particulars of the original petition, and we hold that such amendment was properly permitted.

[2] 2. The bank's petition for revision presents a question slightly different from the cases thought to support so much of the order as struck out of the amended petition the allegation of concealment by Havens of the proceeds of the mortgage of May, 1917.

It was assumed below that this was an act of bankruptcy not set forth in the original petition and only charged in and by an amendment made more than four months after its commission. Whether such an act, occurring more than four months before amendment, could be introduced into a pending proceeding, was thought an "interesting question" by Lacombe, J., in the Riggs Case, supra. This court answered it in the negative (In re Haff, 136 Fed. 80, 68 C. C. A. 646), the matter not having been covered by In re Sears, 117 Fed. 294, 54 C. C. A. 532, which was correctly explained and limited in application by Gleason v. Smith, 145 Fed. 897, 76 C. C. A. 427. The general rule as stated in the Haff Case has been approved, especially in the Ninth circuit (Walker v. Woodside, 164 Fed. 685, 90 C. C. A. 644), and in the Seventh (In re Brown Commercial Car Co., 227 Fed. 390, 142 C. C. A. 83). Our own decision (In re Condon, 209 Fed. 801, 126 C. C. A. 524) is (in this respect) but a reassertion of the Haff Case.

This rule rests in theory upon the reasoning of Justice Nelson in Re Craft, 6 Blatchf. 177, Fed. Cas. No. 3,317, where it was pointed out that "to allow a substantial amendment—that is, one going to the whole foundation of the proceeding nunc pro tunc—would be a direct violation" of a limitation "obviously for the benefit of the debtor," namely, the requirement that proceedings must be brought within a limited time after the act of bankruptcy is committed; i. e., under the present statute, four months.

If, therefore, the creditors' allegations in respect of the proceeds of the $30,000 mortgage are to be regarded as stating an act of bankruptcy committed and complete more than four months before amended petition filed, the order complained of was right. But the allegations stricken out are to the effect that the concealment complained of not only occurred within four months of original petition, but had continued down to the date of amendment.

The concealment of property made an act of bankruptcy by section 3 may be a continuing concealment and the four months period may run from the date of discovery. Citizens' Bank v. De Pauw Co., 105 Fed. 926, 45 C. C. A. 130. It was, we think, clearly the intent of the pleader to allege a continuing concealment, not discovered until within four months of amendment. The language is vague, and if the District Judge had required a further amendment, setting forth the circumstances of concealment and discovery with greater particularity, we should have regarded such an order as the exercise of reasonable discretion and therefore not reviewable. In re Rosenblatt, supra. But

to strike out the allegations altogether was, we think, error, because it prevented presentation to the court of what (reading the pleadings benevolently) may be shown to be entirely within the decisions above referred to.

[3] 3. It being admitted that the order requiring Havens to attend and be examined was, under Cameron v. United States, 231 U. S. 710, 34 Sup. Ct. 244, 58 L. Ed. 448, proper, it was error to practically nullify the order by granting the alleged bankrupt immunity from service.

We are of opinion that all the facts shown in evidence inevitably point to the conclusion that Havens had departed from Olean a few days before this petition in bankruptcy was filed, and thereafter practically secreted himself. Against such evidence Havens' statement of a conclusion that he had been "since October, 1917, a citizen and resident of the state of Missouri," is no more than an effort to deny the logical result of the facts shown against him.

As, however, he may hereafter find it advisable to show himself within the Western district of New York, as he did in April last, we shall consider whether an alleged bankrupt, while attending the trial of an involuntary petition against him, is privileged from examination under section 21a; for, if this be true, he must also be privileged from performing any other duty laid upon him by the act and usually enforced by a court order.

It is argued under section 7 of the act (Comp. St. § 9591) that Havens could not be required to attend for examination at Buffalo, because it was more than 150 miles distant from his home or principal place of business. Assuming that both his personal and business homes were most remote from Buffalo, we think the section referred to has no application, because he had already come there. Inasmuch as he refused to obey the order at all, the question whether (assuming a remote residence) he could have been compelled to continue in attendance without having his expenses paid is a question not before us.

It is true that one going to a town or place in order to attend a trial is secure from service of process eundo morando redeundo, even though he be a party. Hale v. Wharton (C. C.) 73 Fed. 739. But a party who is attending the trial of his cause is assuredly subject to the orders of the trial court in respect of the matter under adjudication. What the District Court had jurisdiction over was the question whether Havens was a bankrupt, and the examination directed, since it must relate to the "acts, conduct or property" of the alleged bankrupt himself, was a most important part of that investigation. The argument for immunity really assumes that any bankrupt who chooses to remove himself from the territorial jurisdiction of adjudication is by the fact of removal entitled to all the privileges of a stranger; indeed, rather more, in that he can attend the bankruptcy court for such purposes as he pleases, and decline to attend when he does not please.

But the duties of a bankrupt are laid down by the statute, and so are his privileges. Section 9 (Comp. St. § 9593). The order complained of exceeded the statute. If the bankrupt removes into another district, ancillary proceedings are open to his creditors. Babbitt v. Dutcher, 216 U. S. 102, 30 Sup. Ct. 372, 54 L. Ed. 402, 17 Ann. Cas.

969; In re Madson Steele Co., 216 U. S. 115, 30 Sup. Ct. 377, 54 L. Ed. 407. But when the bankrupt is in attendance upon the court lawfully engaged about the business of his adjudication, he must submit to all the lawful orders of that court, including examination under section 21a. This we regard as inherent in the nature of the jurisdiction created by the Constitution and defined by the Bankruptcy Act. It is therefore ordered, in No. 75, that the petition of the Exchange National Bank be sustained, with costs, and that of Havens be dismissed, with costs, and in No. 95 that the petition of the Exchange National Bank be sustained, with costs.