## In re TRIANGLE S. S. CO., Inc.

(Circuit Court of Appeals, Second Circuit. November 21, 1924.)

No. 54.

**1. United States ⬦40—Settlement of claims by commissioners, under power delegated by Shipping Board, is final.**

Under the provision of Merchant Marine Act, § 3, as amended Act June 5, 1920 (Comp. St. Ann. Supp. 1923, § 8146b), that the duties of the Shipping Board "may be so divided that under its supervision the directorship of various activities may be assigned to one or more commissioners," two commissioners may be authorized by resolution of the board to compromise and settle mutual claims by and against the board, and a settlement made by them while their power continues is final and binding on the board.

**2. United States ⬦40—Shipping Board may delegate to counsel the duty of concluding formal contract on terms agreed on.**

Such a governmental body as the Shipping Board may delegate to its counsel the duty of drawing and concluding a formal contract, which in fact embodies the terms of a settlement informally accepted by it, even though without formal redaction the settlement would not bind the parties.

**3. United States ⬦147—Actual costs of litigation may be charged by court of bankruptcy against claim recoverable by United States.**

While no costs are recoverable against the United States, a court of bankruptcy, as a court of equity, may charge the actual expense of litigation on a claim recoverable by the United States.

Appeal from and Petition for Revision of' Proceedings of the District Court of the United States for the Southern District of New York.

In the Matter of the Triangle Steamship Company, Inc., bankrupt. Petition by the United States to revise, and appeal from an order of the District Court. Affirmed.

See, also, 267 F. 300, 267 F. 303.

Edgar G. Wandless and William Hayward, both of New York City (Chauncey G. Parker, of Washington, D. C., and Edward M. Allison, Jr., of counsel), for the United States.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (John M. Woolsey, Delbert M. Tibbetts, and John S. Sheppard, all of New York City, of counsel), for Foreign Trade Banking Corporation.

Maurice P. Davidson, of New York City (Alvin C. Cass and Alfred Yankauer, both of New York City, of counsel), for Triangle S. S. Co., Inc.

Before ROGERS, Circuit Judge, and LEARNED HAND and AUGUSTUS N. HAND, District Judges.

LEARNED HAND, District Judge. The order of the District Court under review in effect liquidated a claim of the United States against the bankrupt, following a supposed compromise entered into between the United States Shipping Board, the trustee in bankruptcy, and the Foreign Trade

Banking Corporation. The bankrupt, the Triangle Steamship Company, had had various dealings with the Shipping Board as charterer of vessels, in which dealings the Foreign Trade Banking Corporation had become financially involved. Certain freights had been collected, as to the title to which the parties were in difference. Independently of these, the Shipping Board made a large claim against the trustee, and the trustee in turn made a large claim against the Shipping Board. There were as well certain surety bonds which the Shipping Board wished to press for defaults of the bankrupt.

There being the prospect of long and complicated litigation, Cass, the attorney for the trustee, on January 13, 1922, proposed to the counsel of the Shipping Board a mutual settlement of all claims of the three parties, the details of which are not important here. On January 23, 1922, Smyth, one of its counsel, wrote to the board, asking for authorization to settle the board's controversies with the Triangle Company in accordance with Cass' letter. He correctly set forth all the details of the settlement so far as it affected the board, but said nothing of the settlement between the bankrupt and the bank, in which the board had no interest. By resolution the matter was referred, with power, to two commissioners, who, on February 17th, approved the proposed settlement and directed Smyth to carry it into effect. This was subsequently done by Aron, Smyth's assistant, but after the formal agreement had been drawn and orally agreed to by the attorneys for all parties, though not signed, the board repudiated the whole negotiation.

The petitioner raises two questions: First, whether the board might delegate to two of its members the conduct of the settlement; second, whether any final agreement was reached. The respondent raises the question of our power to look into the merits at all; but, as we agree with the disposition made below, we ignore that objection.

[1] We think that the two commissioners had power to compromise the claims. Section 3 of the Merchant Marine Act as amended Act June 5, 1920 (Comp. St. Ann. Supp. 1923, § 8146b) gave the board power to divide its duties by assigning the "directorship of various activities" to one or more commissioners under "supervision" of the board. The primary purpose was no doubt to allow the division of the board's activities into large groups, and to set each under one or two commissioners; yet we think that a "directorship" might include the conduct of a single matter; the greater must include the less. It cannot be that the reserved "supervision" was meant to retain all final authority in the board, because, so construed, the section added nothing to the board's powers without it. The natural purpose was to relieve the board pro tanto of the usual limitation against delegating its powers which exists in the case of governing bodies generally. Of course, it might still direct the commissioners in detail, or recall their powers altogether; but things done by them must be treated as final while their authority continued else the section means nothing. The fact that the board so construed its own powers in this instance is not to be ignored.

[2] A more doubtful matter is whether any settlement was finally reached. The eventual contract does no more, so far as we can see, than put into formal shape Cass' original proposal of January 13th. That proposal, so far as concerned the board, was, as we have said, faithfully communicated in Smyth's letter of January 23d. On February 17th, Aron, the board's counsel in charge, communicated its acceptance to Cass, and to Tibbetts, who represented the bank. This he did in accordance with the commissioners' direction of the same date, which might, of course, depute him to do such a ministerial act.

However, we agree that this formed no contract, because the bank had not accepted Cass' proposal until April 10th, and, when Tibbetts sent the corrected draft agreement to Aron and to Cass, it was clear that the negotiations were still open. Moreover, Aron did not mean on February 17th finally to commit the board until he was satisfied that the sureties would not be released, an assurance he only got on July 12th. On July 19th he wrote to Woolsey, for the bank and Cass, that the Department of Justice had approved the agreement, and these letters, since the other parties were by that time in accord, would have constituted a final acceptance, but for the suggestion of a further conference regarding the terms of the formal contract. That there was such a conference, at which all matters were finally settled between the three, appears from the testimony of Aron and Tibbetts.

Since there is no evidence that the two commissioners ever personally agreed to this final redaction of the contract, the case

comes down in our judgment to whether they had the power to depute Smyth, and he, Aron, to take "whatever steps are necessary to carry into effect the settlement on the basis proposed," as they put it in their direction of February 17th. This, of course, could include no more than a true reduction into legal form of the substance of the compromise as agreed, after proper assurance that the legal rights of the board against the sureties were protected. If Smyth might be legally deputed to do this, he might accept and close the contract, and this Aron, his deputy, in fact did in conjunction with the attorneys for the other two parties. While it is true that the making of a contract is not a ministerial duty, still it has been held to be a deputable duty, when the terms of the agreement have already been determined. Hitchcock v. Galveston, 96 U. S. 341, 347–349, 24 L. Ed. 659; Cass County v. Gibson, 107 F. 363, 368, 369, 46 C. C. A. 341 (C. C. A. 6).

Indeed, it would be absurd to require the two commissioners personally to approve the decision of their attorney upon the form of the contract and upon whether the board's rights had been protected. They knew nothing of such things, and had counsel precisely to avoid any responsibility in respect of them. However complicated might be the questions which might arise, they were not competent to decide them, and must have been guided by their advisers. When, therefore, Aron had satisfied himself that the contract protected the board and embodied the decision of the two commissioners, and certainly after he agreed, though orally, to its form, a final compromise was struck, to which the signatures were needed only for permanent evidence of assent. It was thereafter too late for any party to withdraw. United States v. Purcell Envelope Co., 249 U. S. 313, 39 S. Ct. 300, 63 L. Ed. 620. We decide only this: That such a governmental body as the board may delegate to its counsel the duty of drawing and concluding a formal contract, which in fact embodies the terms of a settlement informally accepted by it, even though without formal redaction the settlement would not bind the parties.

We are clear that the order did not specifically enforce the contract. It did no more than liquidate the claims of the United States and the bank against the trustee. As to what effect it may have elsewhere by way of estoppel, we do not express an opinion.

[3] The deduction by the District Court of the master's fees as costs was erroneous, but the name does not matter. While it is, of course, well settled that no costs are allowable against the United States, we are referred to no authority which prevents a court of equity (which a court of bankruptcy is) from throwing the actual expenses of the litigation upon the share recoverable by the United States. The amount of the allowance is not challenged, and we say nothing about it.

Petition dismissed; order affirmed.