## HOVLAND v. FARMERS' STATE BANK OF CHRISTINE, N. D., et al.

(Circuit Court of Appeals, Eighth Circuit. January 2, 1926.)

No. 270.

1. **Bankruptcy ⟨⟩14—Domicile held to remain unchanged, notwithstanding determination to acquire new domicile, which had not been definitely chosen.**

Where alleged bankrupt had determined to acquire new domicile in California, but had not chosen definite place of such domicile, his domicile remained in Minneapolis, where it had been for years previous.

2. **Bankruptcy ⟨⟩91(2)—Finding that alleged bankrupt had domicile at certain place held supported by evidence.**

Finding that alleged bankrupt had domicile at certain place at times of filing petition and amended petition *held* supported by substantial evidence.

3. **Limitation of actions ⟨⟩127(2)—Amendment to petition, setting up no new cause of action, and simply varying allegations, relates back to commencement of action.**

Amendment to petition, which sets up no new cause of action, but simply varies allegations in support of cause of action already propounded, relates back to commencement of action, and running of statute against claim is arrested at that point.

4. **Limitation of actions ⟨⟩127(11)—Amendment introducing different cause of action does not relate back to beginning of action, so as to stop running of statute.**

Amendment to petition, introducing different cause of action, does not relate back to beginning of action so as to stop statute, but is equivalent to fresh suit on new cause of action.

5. **Bankruptcy ⟨⟩81(4)—Averment of act of bankruptcy in language of statute is insufficient.**

Averment of act of bankruptcy in language of statute is insufficient.

6. **Bankruptcy ⟨⟩84—Acts of bankruptcy, not alleged in original petition, cannot be charged by amendment filed more than four months after commission of acts of bankruptcy.**

Acts of bankruptcy, not alleged in original petition, cannot be charged by amendment filed more than four months after commission of such acts of bankruptcy.

7. **Limitation of actions ⟨⟩127(1)—Allegations of original pleading must be sufficiently specific to enable court to determine whether amended pleading refers to same cause of action.**

Allegations of original pleading must be sufficiently specific to enable court to identify cause to be set up, and determine whether the original and amended pleading refer to same cause of action.

8. **Limitation of actions ⟨⟩127(2)—Amended pleading, setting up no new cause of action, ought to relate back to date of filing of original pleading.**

Where original pleading is sufficiently specific to identify cause of action, and amended pleading introduces no new cause of action, then amendment to pleading ought to relate back to date of filing of original pleading.

9. **Bankruptcy ⟨⟩84—Amendment to petition in bankruptcy held not to relate back to original petition.**

Amendment to petition in bankruptcy *held* not to relate back to original petition, which alleged acts of bankruptcy in general language of Bankruptcy Act, § 3a, subds. (1) and (2), being Comp. St. § 9587.

Petition to Revise Order of the District Court of the United States for the District of Minnesota; William A. Cant, Judge.

Petition in bankruptcy by the Farmers' State Bank of Christine, N. D., and others, against A. M. Hovland. Order of District Court overruling plea in abatement and plea in bar, and defendant petitions to revise. Order overruling plea in abatement affirmed, and order overruling plea in bar reversed, with direction.

L. H. Joss, John N. Ohman, R. H. Fryberger, and W. G. Parker, all of Minneapolis, Minn., for petitioner.

Charles Burke Elliott, Nicholas Doll, and N. M. Coursolle, all of Minneapolis, Minn., for respondents.

Before STONE and VAN VALKEN-BURGH, Circuit Judges, and PHILLIPS, District Judge.

PHILLIPS, District Judge. On June 23, 1923, the respondents filed an involuntary petition in bankruptcy against the petitioner. The allegations of that petition material to this inquiry are:

"That A. M. Hovland, of Minneapolis, Minn., has for the greater portion of six months next preceding the date of filing this petition had his principal place of business and resided and had his domicile at Minneapolis, in the county of Hennepin, and state and district aforesaid. * * *

"And your petitioners further represent that said A. M. Hovland is insolvent, and that, within four months next preceding the date of this petition, the said A. M. Hovland committed an act of bankruptcy, in that he did heretofore, to wit, on the 24th day of February, 1923, and on various dates subsequent thereto, convey, transfer and conceal his property, or a large part thereof, with intent to hinder, delay, or defraud certain of his creditors, and more particularly these petitioners, and has transferred while insolvent a large portion of his property to one of his creditors, with intent to prefer said creditor over his other creditors."

On December 3, 1923, the respondents, with leave of court first had and obtained, filed an amended petition, in which they alleged as acts of bankruptcy the following:

"That within four (4) months next preceding the filing of this petition, namely, on or about the 24th day of February, 1923, the said A. M. Hovland, while insolvent, committed an act of bankruptcy, in that he did deliver certain property and securities to the Merchants' & Manufacturers' State Bank of Minneapolis, Minn., of which he had formerly been president, and to which he then was indebted, for the purpose of preferring said bank over his other creditors, and that on or about the 27th day of February, 1923, to more effectively carry out the purpose of the said preference, to the Merchants' & Manufacturers' State Bank, did transfer, convey, and deliver to one Louis H. Joss, as attorney, agent, and representative of the said Merchants' & Manufacturers' State Bank, certain bonds, mortgages, and securities, belonging to the said Hovland, the exact description of which is to these petitioners unknown, and which constituted all of the property then owned by the said Hovland in his own name, and did on the said date execute and deliver to the said Joss, as attorney, agent, and representative of the said Merchants' & Manufacturers' State Bank, a power of attorney transferring and delivering all of his property of every character and nature to the said Joss, with full power to dispose of the same in any manner seen fit by the said Joss, without reference to the said Hovland, and that the said Joss did, in pursuance of said power of attorney and authorization, secrete from all creditors of the said Hovland, except the said Merchants' & Manufacturers' State Bank, the nature, character, and whereabouts of said Hovland's property, and ever since has continued to, and now does, so secrete said property from all the creditors of the said Hovland, except the said Merchants' & Manufacturers' State Bank of Minneapolis, and subsequent to and in pursuance of the authority so given him conveyed certain concealed interests in real estate owned by the said Hovland, although not held in his name, to a certain corporation organized by the said Joss and certain of the directors of the said Merchants' & Manufacturers' State Bank for the purpose of preferring said Merchants' & Manufacturers' State Bank over the other creditors of the said Hovland, the exact name of which said corporation, and the exact nature of the said property so conveyed to it, are to the petitioners unknown. That the said conveyance rendered it impossible for these petitioners, or any of the creditors of the said Hovland, except the said Merchants' & Manufacturers' State Bank, to recover from said Hovland upon their claims. That said conveyance to the Merchants' & Manufacturers' State Bank first above mentioned, and the execution of the said power of attorney to the said Joss, and the said secret delivery of securities to him, and the said transfers by said Joss of concealed interests of the said Hovland, were all parts and parcels of a single plan and act, and steps in a single scheme and transaction having for their object and purpose a preference to, and which did prefer, the said Merchants' & Manufacturers' State Bank over all other creditors of the said Hovland, including petitioners. That the said act or acts of transferring and conveying said concealed interests, and of transferring and conveying and delivering to the said Joss of the securities above mentioned, were done and performed with the intent by the said Hovland to hinder, delay, and defraud all of his

creditors, except the said Merchants' & Manufacturers' State Bank."

To the amended petition the petitioner here interposed a plea in abatement, in which he alleged that for the greater portion of the period of six months next preceding the filing of the petition, and for the greater portion of the period of six months next preceding the filing of the amended petition, he did not reside, have his principal place of business, or have his domicile at Minneapolis, in the district of Minnesota, and a plea in bar in which he set up that the original petition alleged no acts of bankruptcy, that the amended petition did not relate back to the date of the filing of the original petition, and that the acts of bankruptcy alleged in the amended petition occurred more than four months prior to the filing thereof.

The matter was thereupon referred to the referee in bankruptcy, to take the evidence upon the issues raised by these pleas. The evidence was taken before the referee and reported to the District Court in writing. Thereafter the District Court entered its order overruling both pleas. The petition here seeks to revise that order.

The testimony adduced before the referee shows that the alleged bankrupt, the petitioner here, for a period of 19 years immediately prior to March 10, 1923, resided and had his domicile in the city of Minneapolis, Minn.; that for many years he was president of the Merchants' & Manufacturers' State Bank; that in the month of February, 1923, he resigned from that office, left Minneapolis, and went to North Dakota; that on March 10, 1923, his wife, Oline Hovland, joined him at Williston, N. D.; that petitioner was then ill, and his physician advised him to go to California; that petitioner, accompanied by his wife, left Williston on March 10, 1923, with the intention of establishing a home somewhere in Southern California; that they arrived at San Diego March 22, 1923; that from then until September 18, 1923, they resided at various places in Southern California; and that on September 18, 1923, the testimony of the petitioner in this matter was taken by deposition at Los Angeles. Upon the point as to whether or not he had established a residence at any particular point in Southern California, he testified:

"Q. What was done with your furniture when you left? A. Some of it was left there, and was a little later taken and stored, and our daughter in Minneapolis took care of some of it.

"Q. Were there any reasons why you didn't bring it with you to California? A.

Well, we didn't know just exactly what part of Southern California we would settle in, and we didn't figure it was worth while to move all that old furniture that we had. We had been trying to sell it off, more or less, what we could, but we didn't figure it would pay to ship it. * * *

"Q. Has it been your intention since you left Minneapolis to establish your residence at any one given point in Southern California or elsewhere? A. Well, of course, I wasn't acquainted enough in Southern California to know just exactly where I would want to live in Southern California.

"Q. Don't know yet? A. Do you mean the house?

"Q. The particular district, at least. A. No; it is hard to judge.

"Q. So as a matter of fact you have not established your residence anywhere in Southern California, have you? A. I have established it in Southern California, but not the exact place that I intend to live in."

[1] Undoubtedly up to March 10, 1923, the domicile of the petitioner was at Minneapolis. That remained his domicile until he acquired a new one elsewhere. While the proof shows that he had determined to acquire a new domicile in California, he had not chosen, when either petition was filed, a definite place in Southern California, as such new domicile. Until such choice was made, his domicile remained in Minneapolis. Cooper et al. v. Beers et al., 143 Ill. 25, 33 N. E. 61, and note, 40 L. R. A. (N. S.) 986; 9 R. C. L. § 18, p. 553.

[2] The finding of the trial court that petitioner had his domicile at Minneapolis at the times the petition and amended petition were filed, not only is supported by substantial evidence, but it appears conclusively that no other correct finding could have been made. The plea in abatement was therefore properly overruled.

[3, 4] The plea in bar presents this question: Can a petition which alleges, under subdivision a (1) and (2) of section 3 of the Bankruptcy Act (Comp. St. § 9587), acts of bankruptcy in the general language of the statute, be amended by alleging specific acts of bankruptcy under those subdivisions, committed more than four months prior to the filing of the amended petition? The trial court answered the question in the affirmative.

The rule which governs the reciprocal effect of the doctrine of relation and the statute of limitations upon each other in the matter of amendments to petitions was stated by

this court in Whalen v. Gordon et al. (C. C. A. 8) 95 F. 305, 308, 37 C. C. A. 70, 74, as follows:

"An amendment to a petition which sets up no new cause of action or claim, and makes no new demand, but simply varies or expands the allegations in support of the cause of action already propounded, relates back to the commencement of the action, and the running of the statute against the claim so pleaded is arrested at that point. But an amendment which introduces a new or different cause of action, and makes a new or different demand, not before introduced or made in the pending suit, does not relate back to the beginning of the action, so as to stop the running of the statute, but is the equivalent of a fresh suit upon a new cause of action, and the statute continues to run until the amendment is filed."

See, also, Crotty v. Chicago G. W. Ry. Co. (C. C. A. 8) 169 F. 593, 95 C. C. A. 91; Seaboard Air Line Ry. v. Renn, 241 U. S. 290, 36 S. Ct. 567, 60 L. Ed. 1006; Union Pacific Ry. Co. v. Wyler, 158 U. S. 285, 15 S. Ct. 877, 39 L. Ed. 983; Texas & Pacific Ry. Co. v. Cox, 145 U. S. 593, 12 S. Ct. 905, 36 L. Ed. 829; Sicard et al. v. Davis et al., 6 Pet. 124, 8 L. Ed. 342; 37 C. J. §§ 507–516, pp. 1068–1078.

[5] An averment of an act of bankruptcy in the language of the statute is insufficient. In re Phillips (C. C. A. 2) 193 F. 638, 113 C. C. A. 506; In re Condon (C. C. A. 2) 209 F. 800, 126 C. C. A. 524; In re McGraw (D. C. W. Va.) 254 F. 442, 444; In re Pure Milk Co. (D. C. Ala.) 154 F. 682.

[6] Acts of bankruptcy, not alleged in the original petition, cannot be charged by amendment to such petition filed more than four months after the commission of such acts of bankruptcy. In re Havens (C. C. A. 2) 255 F. 478, 481, 166 C. C. A. 554; In re Haff (C. C. A. 2) 136 F. 78, 80, 68 C. C. A. 646; Walker v. Woodside (C. C. A. 9) 164 F. 680, 685, 90 C. C. A. 644; In re Brown Commercial Car Co. (C. C. A. 7) 227 F. 387, 390, 142 C. C. A. 83; In re Pure Milk Co. (D. C. Ala.) 154 F. 682.

Where the original petition alleges the act or acts of bankruptcy in the general language of the statute, and it is sought to cure this defect by an amended pleading filed more than four months after the commission of the alleged acts of bankruptcy, the courts are not in accord as to whether or not the amended pleading relates back to the date of the filing of the original petition.

The petitioner cites the following cases:

In re Louisell Lumber Co. (C. C. A. 5) 209 F. 784, 126 C. C. A. 508; In re Condon (C. C. A. 2) 209 F. 800, 126 C. C. A. 524; In re Havens (C. C. A. 2) 255 F. 478, 166 C. C. A. 554; In re Triangle S. S. Co. (D. C. N. Y.) 267 F. 303; Id. (C. C. A.) 3 F.(2d) 894. See, also, In re Harris (C. C. A. 1) 299 F. 395, 398, 39 A. L. R. 252.

In the case of In re Louisell Lumber Co., supra, the court, referring to the original petition, said:

"It contained no statement whatever that the corporation had committed any one of the five acts of bankruptcy. * * * It did not contain any attempt or defective effort to state any one of such acts of bankruptcy. It was an absolute blank so far as such allegations are concerned."

The court held that the original petition wholly failed to state a cause of action and that the amended petition did not relate back to the time the original petition was filed.

In the case of In re Condon, supra, the original petition alleged in the language of the statute that Condon had made transfers to hinder, delay, or defraud his creditors, and also transfers with the intent to prefer creditors. An amended petition was filed, which set forth the details of 12 separate transactions of the kind generally charged in the original petition. The court held that, since the petition became a sufficient one only when fortified with the amendment, the four-months limitation ran from the date of the amended, and not the original, petition. In the case of In re Havens, supra, the same court, referring to the Condon Case, said that it had previously held in Re Haff, 136 F. 78, 68 C. C. A. 646, that a new act of bankruptcy could not be set up in an amended petition filed more than four months after the commission of such act of bankruptcy, and that the decision in the Condon Case merely reasserted the decision of the Haff Case.

In the case of In re Triangle S. S. Co., supra, the court held that, where acts of bankruptcy are sufficiently alleged for the first time in an amended petition, the four-months period must be computed from the filing of the amended, and not the original, petition, citing In re Condon, supra, and In re Havens, supra. The allegations of the original petition appear in (D. C.) 267 F. at page 300. They are very general in character, but are slightly more specific than the general language of the statute.

Among the cases cited and relied upon by the respondents are First State Bank of Cor-

with, Iowa, v. Haswell et al. (C. C. A. 8) 174 F. 209, 98 C. C. A. 217; Ryan et al. v. Hendricks (C. C. A. 7) 166 F. 94, 92 C. C. A. 78; Millan v. Exchange Bank of Mannington et al. (C. C. A. 4) 183 F. 753, 106 C. C. A. 327; In re Broadway Savings Trust Co. (C. C. A. 8) 152 F. 152, 81 C. C. A. 58; In re Plymouth Cordage Co. et al. (C. C. A. 8) 135 F. 1000, 68 C. C. A. 434. These cases had to do with amendments, adding additional petitioning creditors, averring the amount and nature of claims of petitioning creditors, averring occupation of debtor, and correcting omissions in verification. But respondents more particularly rely upon the following cases to support their contention: Hark v. Allen Co. (C. C. A. 3) 146 F. 665, 77 C. C. A. 91; Chicago Motor Vehicle Co. v. American Oak Leather Co. (C. C. A. 7) 141 F. 518, 72 C. C. A. 576; International Silver Co. et al. v. New York Jewelry Co. et al. (C. C. A. 6) 233 F. 945, 147 C. C. A. 619; In re Bartleson Co. (D. C. Fla.) 253 F. 296; In re Glory Bottling Co. (D. C. N. Y.) 278 F. 625; In re Shoesmith (C. C. A. 7) 135 F. 684, 68 C. C. A. 322.

In Hark v. Allen, supra, the petition alleged that the bankrupts had "removed, transferred, and concealed a large portion of their property, consisting of pieces of woolen goods, silks, linens, etc., from their place of business at 821 Cherry street, Philadelphia, with intent to hinder, delay and defraud their creditors." More than four months after the date of the acts of bankruptcy were alleged to have been committed the court permitted the petitioning creditors to set up in an amended petition by specific allegations the same acts of bankruptcy differently characterized. The original petition was sufficiently specific to enable the court to determine that the acts of bankruptcy set up in the amended petition were the same as those referred to in the original petition.

In Chicago M. V. Co. v. American O. L. Co., supra, the court, in referring to the petition, said:

"Petition by three creditors for such adjudication was filed October 12, 1903, averring insolvency of the appellant and the commission of acts of bankruptcy within four months. It specified three instances of alleged preference within four months, and while so insolvent, with intent to prefer the three creditors named, and avers that like preferences were given within such time 'to certain of its creditors, whose names are at present unknown' to the petitioners, 'to the amount of at least five hundred dollars.'"

The alleged bankrupt made no objection to the general allegation, but joined issue thereon in its answer. The matter was referred to the referee, who heard the evidence and found preferential transfers and payments within the four-months period to three specified creditors, none of which were specifically alleged in the petition. Thereafter leave was granted the petitioning creditors to amend the petition to include the acts of bankruptcy found and reported by the referee. The court held that, under the circumstances, this amendment was proper, and that it related back to the date of the original petition.

In International Silver Co. v. N. Y. J. Co., supra, preferential transfers were alleged in the language of the statute. With the consent of the bankrupt, the petition was amended, so as to properly charge a preferential transfer, more than four months after the transfer was made. The objection to the amendment was raised by the transferee. The court held the amendment proper.

In the case of In re Glory Bottling Co., supra, the court permitted a petition which alleged the acts of bankruptcy in the language of the statute to be amended after the expiration of four months from the date of one of the acts of bankruptcy.

The case of In re Bartleson Co., supra, followed the Hark v. Allen Case.

In the case of In re Shoesmith, supra, the exact character of the amendment does not appear.

[7] It is well settled that the amended pleading must not set up a new cause of action. If this be so, then manifestly the allegations of the original pleading must be sufficiently specific to enable the court to identify the cause of action therein sought to be set up and to determine whether or not the original and amended pleading refer to the same cause of action. Boudreaux v. Tucson Gas, E. L. & P. Co., 13 Ariz. 361, 114 P. 547, 33 L. R. A. (N. S.) 196; Arizona Eastern R. Co. v. Old Dominion Copper M. & S. Co., 14 Ariz. 209, 127 P. 713; Hagenauer v. Detroit C. M. Co., 14 Ariz. 74, 124 P. 803, Ann. Cas. 1914C, 1016.

[8] On the other hand, if the original pleading is sufficiently specific to identify the cause of action, however defective and imperfect it may be, and it appears that the amended pleading introduces no new cause of action, but merely enlarges, amplifies, or makes more definite and certain the allegations of the original pleading with reference to the same cause of action, then the amended

pleading ought to relate back to the date of the filing of the original pleading.

[9] Tested by the foregoing rules, the amendment in the instant case cannot be held to relate back to the original petition. While the acts of bankruptcy set up in the amended pleading refer to the same kind and character of acts of bankruptcy which the original petition undertook to allege by employing the general language of the statute, it is wholly impossible to tell whether or not the pleader had in mind the same specific acts of bankruptcy.

It follows that neither the original nor the amended petition in bankruptcy was sufficient, and the plea in bar should have been sustained.

The order is therefore reversed, with costs, and the District Court is directed to enter an order sustaining the plea in bar.